NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
RYAN WATERS (Cal. Bar No. 268015)
Special Assistant United States Attorney
Asset Forfeiture Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4493
    Facsimile: (213) 894-0142
    E-mail: Ryan.Waters@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> $233,210.00 IN BANK FUNDS, <br><br> Defendant. | No. 2:19-CV-02989 <br><br> VERIFIED COMPLAINT FOR FORFEITURE <br><br> 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984 <br><br> [U.S.S.S.] |

    Plaintiff United States of America brings this claim against defendant $233,210.00 in Bank Funds, and alleges as follows:

## JURISDICTION AND VENUE

1. The government brings this <u>in</u> <u>rem</u> civil forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395(a).

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $233,210.00 in Bank Funds seized pursuant to a federal seizure warrant on May 25, 2018, from a Bank of America account with the last four digits ending in 3410 ("BofA Account 3410") and held in the names of Ruping Li and Weijie Jin (the "defendant funds"). The defendant funds were seized at Bank of America, Legal Order Processing, 800 Samoset Drive, Newark, Delaware.

6. The defendant funds are currently in the custody of the United States Secret Service ("USSS") in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Ruping Li, Weijie Jin, Meiju Group, K.J.K, G.H., D.M., G.G.C., and Company #2 may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

<u>Background on "Romance Scam" Fraud Scheme Investigation</u>

8. The USSS has been investigating a romance scam, social engineering scam and business email scam fraud scheme involving multiple victims. A romance scam fraud scheme occurs when a victim is induced into believing he or she is in a romantic relationship with the fraudster, who is using a fake internet persona. The fraudster then convinces the victim, through false pretenses and material misrepresentations, to wire money into accounts controlled by the fraudster.

9. A social engineering scam fraud scheme is similar to a romance scam fraud scheme. However, social engineering scam fraud scheme victims also sometimes serve as money mules, in that these victims are recruited by the scheme perpetrators to receive and transfer money acquired from the perpetrators' criminal activities.

10. A business email scam fraud scheme targets victim companies by targeting company employees with access to company finances and tricking them into making wire transfers to bank accounts thought to belong to trusted company partners, when in fact the money is wire transferred into accounts controlled by the scheme perpetrators. In most cases, the targeted employees of the victim company has not met the scheme perpetrator before the employee wires or sends funds, and the funds are transferred through intermediary bank accounts being used as layering accounts. Layering entails separating the criminal proceeds from their original source and creating a complex audit trail through a series of financial transactions to make the proceeds appear to have come from legitimate sources.

<u>G.H. (Romance Scam Fraud Scheme)</u>

11. In February 2015, G.H. met a person who went by the name Jimmy Bistodeau on Facebook. G.H. began communicating with Bistodeau via the Internet or telephone text message. G.H. never met Bistodeau in person.

12. After several months of communicating, Bistodeau asked G.H. to send him money to pay for his medical bills. From 2015 to 2018, G.H. sent over $100,000 via Western Union or Wal-Mart Money Gram Service to accounts identified to her by Bistodeau. On many occasions, Bistodeau would request that G.H. send funds to recipients with names other than his. When G.H. asked about the other recipients, Bistodeau said that due to his medical condition, other people would be retrieving the money transfers on his behalf. In January 2018, Bistodeau asked G.H. to send a wire transfer to his purported brother, Ruping Li. G.H. wired $4,500 to BofA Account 3410.

D.M. (Romance Scam Fraud Scheme)

13.  D.M. met a woman who went by the name Mary Ann Cooper on an Internet dating site. D.M. and Cooper began communicating via telephone, text messages and email, but never met in person. In January 2018, Cooper told D.M. that she had received funds from her family's oil business, and wanted to send a $26,779 wire transfer to D.M. so that he could forward them to four other accounts. After receiving the $26,779 transfer, D.M. wired $20,500 to BofA Account 3410 and the remaining $6,279 to three other accounts.

G.G.C. (Romance Scam Fraud Scheme)

14.  In December 2017, G.G.C. met a person who went by the name Mike Flozi on the Internet dating site Match.com. Flozi told G.G.C. that he owned a home in Naples, Florida and was originally from Greece. G.G.C. stated that she communicated with Flozi on a daily basis and it was not uncommon for her to receive approximately 20 text messages per day from Flozi. G.G.C stated that Flozi visited G.G.C. approximately four times per month, and they had talked about marrying and buying a home together. G.G.C. stated that all her visits with Flozi took place at G.G.C.'s home in Sarasota, Florida or at locations near her home. G.G.C. had never been to Flozi's home in Naples, Florida.

15.  Approximately three weeks after meeting Flozi on Match.com, Flozi told G.G.C. that he had sold a high rise building in the country of Cyprus for $27 million and needed to pay $80,000 in taxes. Flozi explained to G.G.C. that he used money transfer agents to send money overseas because they could transfer the funds in one day, and that he used different agents for his last twenty money transfers. Flozi then asked G.G.C. to help with the transfer and gave G.G.C. approximately $50,000 in cash and a check to cover an $80,000 wire. G.G.C. did not deposit the cash or check into her Sun Trust bank account. In early January 2018, G.G.C. went to a Sun Trust bank branch to apply for a $150,000 loan. G.G.C. told the loan officer that she had a boyfriend living in Greece who needed

funds to pay the taxes on the sale of a $26 million building. Sun Trust Bank declined the loan application.

16. On January 17, 2018, G.G.C. pooled funds from all of her accounts at Sun Trust Bank and then wired $80,000 to BofA Account 3410 based on Flozi's instructions. Approximately two days after G.G.C. sent the wire transfer, Flozi told her that the money was never received by Ruping Li, the purported transfer agent. Flozi instructed G.G.C. to file a fraud claim with Sun Trust Bank for the return of the $80,000.

Company #1 (Business Email Scam Fraud Scheme)

17. In January 2018, an accountant at Company #1 received an email purporting to be from the Chief Executive Officer of Company #1's email account, requesting that $17,900 be wired from Company #1 to BofA Account 3410. Company #1's accountant believed the email was legitimate and sent the $17,900 wire transfer as requested. It was later discovered that the funds had been transferred as a result of an email scam and the $17,900 was recovered from Bank of America.

Company #2 (Business Email Scam Fraud Scheme)

18. On January 24, 2018, an accountant at Company #2, located in Richmond, VA, received an email purporting to be from the Chief Executive Officer of Company #2's email account, requesting three wire transfers from Company #2 to the following accounts: (1) Ruping Li, BofA Account 3410, in the amount of $53,240; (2) CLM Trade Group, Chase Bank account ending in 2727, in the amount of $56,800; and (3) The Dill Group, Wells Fargo Bank account ending in 8342, in the amount of $60,450. Company #2's accountant believed the email was legitimate and sent the wire transfers as requested. It was later discovered that the funds had been transferred as a result of an email scam.

//
//

Additional Deposits

19. Bank records for BofA Account 3410 reflect two additional deposits: (1) a $50,000 check deposit on January 19, 2018, drawn on the Bank of America account of Meiju Group, account holder Shujun Zhang and (2) a $24,970 wire transfer on January 30, 2018, from Public Bank of Berhad, account holder K.J.K., located in Malaysia.  These deposits share similarities with the previous wire transfers because they (1) do not fit the regular pattern of deposit activity in BofA Account 3410, which consisted of almost monthly cash deposits under $10,000; (2) were made almost contemporaneously with the other wire transfers in January 2018; (3) were made from people and/or companies in different locations with different financial institutions; and (4) were made from people and/or companies who had not previously deposited funds into BofA Account 3410.

20. On or around May 22, 2018, a USSS investigator contacted the attorney for Meiju Group via telephone to discuss the nature of the January 19, 2018 $50,000 check deposit.  The attorney initially told the investigator that Meiju Group did not have a Bank of America account and ended the call.  Approximately five minutes later, the attorney called back and told the investigator that the $50,000 check was a referral fee for sending clients to Meiju Group for EB5 immigration services consulting.

21. Per the California Secretary of State database, Huiyi Xie is listed as the Chief Executive Officer of Meiju Group.  Huiyi Xie and Zhongming Xie reside in the same household in Irvine, California.  Through USSS investigations, Zhongming Xie has been tied to social engineering fraud scheme where he directed a known victim to wire approximately $80,000 into bank accounts under Zhongming Xie's control.

BofA Account 3410

22. On January 30, 2019, a USSS investigator interviewed Ruping Li ("Li") regarding BofA Account 3410.  Li, a resident of San Marino, told the

investigator that she was the owner and worked in the business and finance department of an automobile company in China. Li stated that her friend Yannzhi told her about Mr. Zhang ("Zhang") from the Meiju Group who could help Li transfer funds from China to the United States to avoid China's currency transaction restrictions. Li communicated with Zhang via telephone or electronic message on a social media website.

23. Li explained that Zhang would transfer funds to BofA Account 3410 and in exchange, she would place equivalent funds, plus a fee, into a China Industrial Bank account ending in 0456, located in China, account holder Ju Bing. Li said she did not have a contract that detailed her arrangement with Zhang for the transfer of funds. When asked about the January 2018 deposits into BofA Account 3410, Li stated that those deposits were made by Zhang for the sole purpose of reimbursing her for the funds that she had deposited into Zhang's account. Zhang told Li that in the event someone asked her about the source of the deposits, she should say the funds were for immigration services.

## FIRST CLAIM FOR RELIEF

24. Based on the above, plaintiff United States of America alleges that the defendant funds constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, to the extent that the defendant funds are not the actual monies or assets directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

//
//

## SECOND CLAIM FOR RELIEF

25. Based on the above, plaintiff United States of America alleges that the defendant funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and/or and (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being violations of 18 U.S.C. § 1343 (wire fraud). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant funds are not the actual monies or assets directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant funds;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should be not be decreed;

(c) that this Court decree forfeiture of the defendant funds to the United States of America for disposition according to law; and

//
//

1        (d)   for such other and further relief as this Court may deem just and
2   proper, together with the costs and disbursements of this action.

3
4   Dated: April 18, 2019               NICOLA T. HANNA
                                                        United States Attorney
5                                                           LAWRENCE S. MIDDLETON
                                                        Assistant United States Attorney
6                                                           Chief, Criminal Division
                                                        STEVEN R. WELK
7                                                           Assistant United States Attorney
                                                        Chief, Asset Forfeiture Section
8
9                                                           */s/ Ryan Waters*
                                                        RYAN WATERS
10                                                          Special Assistant U.S. Attorney
                                                        Asset Forfeiture Section
11  
                                                        Attorneys for Plaintiff
12                                                          UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

I, Fred Apodaca, hereby declare that:

1. I am a Special Agent with the Department of Homeland Security ("DHS"), United States Secret Service ("USSS").

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 18, 2019 in Los Angeles, California.

FRED APODACA
SPECIAL AGENT – USSS